[Docket Nos 30, 31]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CONTE'S PASTA CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC FRANKLIN INSURANCE COMPANY, <br><br> Defendant. | Civil No. 18-12410 (RMB/AMD) <br><br> **OPINION** |

APPEARANCES:

WHEELER, DIULIO & BARNABEI, P.C.
By: Jonathan Wheeler, Esq.
One Penn Center
1617 JFK Boulevard, Suite 1270
Philadelphia, PA 19103
     Counsel for Plaintiff

GIMIGLIANO MAURIELLO & MALONEY, P.A.
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962
     Counsel for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This insurance coverage dispute arises out of listeria contamination of gluten-free pizza crusts manufactured by Plaintiff Conte's Pasta Co., Inc. Conte's Pasta was sued in the United States District Court for the Southern District of Ohio

1

by its customer, Nature's One, for damages flowing from that contamination incident and the events occurring immediately afterwards. Conte's Pasta tendered the defense of that suit to its insurer, Defendant Republic Franklin Insurance Company ("RFI"), which denied coverage.

In this Court, Conte's Pasta seeks a declaration of coverage (Count 1), as well as damages for alleged breach of the insurance contract (Count 2) and alleged bad faith denial of coverage (Count 3).[1] Presently before the Court are the parties' cross-motions for summary judgment as to the coverage question only (i.e., Counts 1 and 2). For the reasons set forth herein, Conte's Pasta's Motion for Summary Judgment will be granted, and RFI Cross-Motion for Summary Judgment will be denied.

I. FACTUAL BACKGROUND

On February 13, 2018, Nature's One filed a "Complaint for Damages and Declaratory Relief" against Plaintiff Conte's Pasta in the Southern District of Ohio. (Mauriello Cert., Ex. A) The Complaint alleged the following.

"Conte's agreed to make gluten free pizza crusts . . . for Nature's One specifically to fulfill requirements for [the]

---

[1] Conte's Pasta originally filed its complaint in New Jersey State Court. On August 2, 2028, RFI removed the suit to this Court on the basis of diversity of citizenship jurisdiction. The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

2

large nationwide grocer," Trader Joe's. (Mauriello Cert. Ex. A, ¶ 1) "Nature's One originally manufactured the pizza crusts at one of Nature's One's facilities," but "[a]t the beginning of 2017, Nature's One sought to manufacture the pizza crusts at a different facility," and selected Conte's Pasta to manufacture the pizza crusts using Nature's One's ingredients and packaging. (Id. ¶¶ 19, 22, 36)  "Within a few months after [Conte's Pasta] began manufacturing the Pizza Crusts, Conte's facility and its Product were contaminated with Listeria Monocytogenes."  (Id. ¶ 2)

The Complaint further alleges that Conte's Pasta failed to "properly quarantine" the contaminated pizza crusts, which resulted in the pizza crusts being shipped to Trader Joe's grocery stores, which in turn, caused Trader Joe's "to track down this inventory and take measures to prevent it from sale to the public."  (Id. ¶¶ 39, 43)  Trader Joe's "returned the entire unsold Product inventory.  Nature's One was required to issue a $150,000 refund to" Trader Joe's. (Id. ¶ 50)

Thereafter, Trader Joe's allegedly "required [that] an independent audit firm audit Conte's manufacturing facility for among other things, food safety, food security, quality control, sanitation, pest control, manufacturing process, food storage, and transportation.  If Conte's passed the audit, [Trader Joe's] would restock the inventory and continue to sell the product."

(Mauriello Cert. Ex. A, ¶ 44)  Conte's Pasta allegedly did not pass the audit.  (Id. ¶ 48)  The Complaint further alleges that "[a]s a result of Conte's failures, [Trader Joe's] stopped ordering Nature's One Pizza Crusts [and] Nature's One also lost $170,898.24 in finished goods, ingredients, and packaging that could not be sold; as well as other facility and asset costs incurred that could not be used as a result of the lost business caused by Conte's; and Nature's One lost significant profits from sales to" Trader Joe's.  (Id. ¶¶ 51-52)[2]

Lastly, the Complaint alleges that "[f]ollowing Conte's failure of the food safety and quality control audit, Nature's One requested that Conte's return the packaging equipment in or around December 2017." (Mauriello Cert. Ex. A, ¶ 88)  Conte's Pasta allegedly "refused to return the equipment."  (Id. ¶ 89)

The Complaint asserts nine causes of action: breach of contract, breach of implied warranties, fraudulent inducement, conversion, unjust enrichment, negligence, negligence per se, negligent misrepresentation, and declaratory judgment. (Mauriello Cert. Ex. A, ¶¶ 54-119)

---

[2] See also id., ¶¶ 5-6 ("As a direct result of Conte's inadequate food safety practices and procedures, and the rampant contamination the Product was discontinued.  Nature's One therefore brings this action to recover the damages it has incurred, including but not limited to its lost accounts receivable, lost inventory, lost profits, and lost goodwill as a result of Conte's misconduct.").

Three months after the Complaint was filed, Nature's One and Conte's Pasta settled the case. (RFI's Statement of Undisputed Material Facts, Dkt. 31-2, ¶ 12) "Conte's Pasta did not pay any damages to Nature's One under the settlement agreement." (Id.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There are no material facts in dispute in these cross-motions for summary judgment. The only question before the Court is whether, based on the insurance contract language, either side is entitled to judgment as a matter of law.

## III. ANALYSIS

"The insurer has a duty to defend the insured 'when the complaint states a claim [that constitutes] a risk.' The duty to defend is generally determined by the language of the policy. When the complaint and the policy correspond, the insurer must defend the suit." Sahli v. Woodbine Bd. of Educ., 193 N.J. 309, 322 (2008) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992)).

Beginning with the allegations of the Complaint, three distinct theories of liability are pled. First, Nature's One sought to recover for injuries it suffered as a result of the

5

contaminated pizza crusts ("the contamination claims"). The clearest loss under this theory of liability is the allegation that Nature's One "was required to issue a $150,000 refund to" Trader Joe's (Mauriello Cert. Ex. A, ¶ 50) for the contaminated pizza crusts that Trader Joe's returned.

Second, Nature's One also sought to recover for the losses caused when Conte's Pasta later failed the independent food safety audit ("the failed inspection claims"). The clearest example of this second type of loss alleged in the Complaint is the allegation that Trader Joe's stopped ordering Nature's One Pizza Crusts altogether, thereby causing lost future profits. (Id. ¶¶ 51-52) This necessarily must be a separate loss caused not by the contamination, but rather by the failed food safety audit, because the Complaint explicitly alleges that if Conte's had passed the audit, "[Trader Joe's] would restock the inventory and continue to sell the product." (Mauriello Cert. Ex. A, ¶ 44)

Third, Nature's One also asserted a claim for conversion that is factually unrelated to either the contamination claims or the failed inspection claims. The conversion claim arises out of the allegation that Nature's One provided packaging equipment owned by Nature's One to Conte's Pasta that Conte's Pasta failed to return. (Mauriello Cert. Ex. A, ¶¶ 35, 88) The

6

complaint alleges that the equipment "is worth at least $70,000." (Id. ¶ 35)

The issue is whether any one of these theories of liability is covered by the insurance policy. Sahli, 193 N.J. at 322. Each theory is discussed in turn.

**A.   The contamination claims**

Relevant to this first theory of liability, the parties' insurance policy contains the following sistership exclusion:

> n. Recall of Products, Work or Other Property
>
> Damage claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
>
> (2) "Your work"; or
>
> (3) Any property of which "your product" or "your work" forms a part;
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Insurance Contract, Section V, Definition of Property Damage, exclusion n.)  Thus, there is no coverage under the policy if there was a general recall because of a defect in Plaintiff's product or work. See Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 239 (App. Div. 2006) ("Exclusion 'n' was devised to make it plain that in such circumstances, while

7

the insurers intended to pay for damages caused by a product that failed, they did not intend to pay for the costs of recalling products containing a similar defect that had not yet failed. We have interpreted the sistership exclusion to mean that it limits coverage when the manufacturer recalls all of the products rather than only those with a defect.") (internal citation and quotation omitted). Conte's Pasta concedes in its reply brief that "[t]his exception clearly applies to damages caused by the recall of . . . Plaintiff's product." [Dkt No. 37, p. 4 of 6] Thus, the contamination claims are excluded from coverage under the parties' insurance contract.

**B.   The failed inspection claims**

As to this second theory of liability, the Court's analysis begins and ends with the definition of "property damage." The policy only covers "tangible property"-- either "physical injury" to such property, or "loss of use" of such property. (Insurance Contract, Section V, Definition of Property Damage) The failed inspection claims are not premised on any alleged damage to tangible property. They are based on the alleged injury to Nature's One's business relationship with Trader Joe's which allegedly resulted in loss of goodwill and lost profits. Such an economic loss is not intended to be covered by general commercial liability policies, <u>Newark Ins. Co. v. Acupac Packaging, Inc.</u>, 328 N.J. Super. 385, 395-96 (App. Div. 2000),

8

and is not covered under the express terms of the parties' insurance contract.

### C. The conversion claim

The parties have not briefed this last theory of liability. However, RFI, in its denial letter, appears to have taken the position that the claim for conversion is not covered by the policy because "[t]he . . . policy excludes 'property damage' that is intentional pursuant to exclusion 2. Expected or Intended Injury." (Mauriello Cert. Ex. C, p. 7)  The flaw in this reasoning though, is that under Ohio and New Jersey law, conversion is not necessarily an intentional tort, Danopulos v. American Trading II LLC, 115 N.E.3d 849, 852 ("A wrongful purpose or intent is not a necessary element of conversion, as a defendant may be liable even if acting under a misapprehension or mistake."); Meisels v. Fox Rothschild LLP, 240 N.J. 286, 304 (2020) ("A defendant may be liable for conversion even when he acted in good faith and in ignorance of the rights or title of the owner.")[3], and nothing in the Complaint clearly alleges that

---

[3] It is not immediately apparent which law would be applied to the conversion claim.  While the complaint was filed in the Southern District of Ohio, and Nature's One is alleged to be a citizen of Ohio, Conte's Pasta is alleged to be a citizen of New Jersey, and the act of conversion-- i.e., the wrongful retention of the equipment at issue-- is alleged to have occurred in New Jersey.  The Court need not resolve the choice of law issue, however, as there is no conflict between New Jersey and Ohio law.

9

Conte's Pasta acted intentionally when it allegedly "refused to return the equipment." (Mauriello Cert. Ex. A, ¶ 89) Thus, it is not clear that the exclusion RFI relies upon applies to this claim. Following the principle that any ambiguities must be resolved in favor of the insured, Cruz-Mendez v. ISU/Ins. Servs. of San Francisco, 156 N.J. 556, 571, 722 A.2d 515, 522–23 (1999), the Court concludes that RFI does have a duty to defend under the parties' insurance policy. The Complaint may be reasonably read as alleging "property damage" in the form of "loss of use of tangible property that is not physically injured." (Insurance Contract, Section V, Definition of Property Damage) Accordingly, RFI did have a duty to defend under the policy, and Conte's Pasta's Motion for Summary Judgment will be granted as to the insurance coverage issue, and RFI Cross-Motion for Summary Judgment as to that same issue will be denied.[4]

## IV. CONCLUSION

For the foregoing reasons, Conte's Pasta's Motion for Summary Judgment will be granted, and RFI's Cross-Motion for

---

[4] As noted at the beginning of this Opinion, the parties did not move for summary judgment as to Conte's Pasta's bad faith claim (Count 3), and therefore the Court makes no ruling as to that remaining claim. If the parties resolve the remainder of their disputes, the Court expects that Conte's Pasta will file an appropriate stipulation of dismissal consistent with Fed. R. Civ. P. 41.

Summary Judgment will be denied.  An appropriate Order accompanies this Opinion.

Dated: May 29, 2020

s/ Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

11